ELIZA H. BROWN, APPELLEE, v. DANIEL BROWN, AP-
PELLANT, AND FIRST NATIONAL BANK OF LINCOLN.

**Husband and Wife.** A contract between a husband and wife,
whereby he transfers his property to her upon condition that
she will assume his debts and pay the same out of the property
received from him and property inherited from her father, is
valid as against the husband.

APPEAL from the district court of Lancaster county.
Tried below before POUND, J.

*Ryan Brothers*, for appellant, cited: *Wallingford v.
Burr*, 15 Neb., 207. *McDonald v. Hewitt*, 15 John., 349.
*Joyce v Adams*, 4 Seld., 291. Langdell's Select Cases, 464,
529, 1010. Benj. on Sales, Sec. 374–5. *Shindler v. Hous-
ton*, 1 N. Y., 261. *Cooke v. Millard*, 5 Lans., 243. *Artcher
v. Zeh*, 5 Hill, 205.

*Mason & Whedon*, for appellee.

MAXWELL, CH. J.

In June, 1886, the plaintiff filed a petition in the dis-
trict court of Lancaster county, in which she alleged that
she is a married woman, and that the defendant, Daniel
Brown, is her husband; that in February, 1886, her hus-
band was indebted to one W. G. Hawkins in the sum of
$11,000, and to other parties in the sum of $725, which
sums were then due, and said creditors were pressing her
husband for payment; that the indebtedness to Hawkins
was for 900 sheep, purchased in 1885, for the sum of
$3,500, which was secured by a mortgage on the sheep;
that her husband at various times had borrowed from
Hawkins divers sums, the dates and the amounts of which
were unknown to the plaintiff, and to secure to said Haw-

kins the payment thereof transferred to him the contract for purchase of section 17, town 9, range 5 E., in Lancaster county; that Hawkins thereafter made the payments on said contracts as they became due and also paid the taxes thereon, by reason of which her husband was indebted to said Hawkins in February, 1886, as aforesaid; that in January, 1885, the plaintiff came into the possession of an estate inherited from her father of the value of about $10,-000; that in February, 1886, and for a long time prior thereto, said Hawkins pressed his claims for payment, whereupon it was agreed between the plaintiff, her husband, and said Hawkins, that plaintiff should assume said indebtedness, together with the other debts heretofore referred to; that she did so assume said debts, and paid said Hawkins of her own money the sum of $1,075, and gave him a mortgage for the sum due on section 17 aforesaid, and certain real estate inherited from her father; that she has paid of the debts of her husband $1,800 in cash, and is further liable therefor in the sum of $10,000; that in consideration of plaintiff assuming and paying said debts, her husband sold and transferred to her all his interest in their household goods, also two horses, one pony, one cow, one yearling calf, one set of harness, one Moline wagon, one mower, one hay rake, one cultivator, one plow, one harrow, one hay rick, and about 900 sheep and about 200 lambs, and one-half interest in a corn-planter; that Hawkins sold and assigned the aforesaid contract to her, and the plaintiff then obtained a deed for the land, which was then mortgaged to Hawkins to secure the amount due to him; that in June, 1886, her husband, without her consent and in violation of her direction, shipped to persons unknown to plaintiff the wool sheared from said sheep and has received an advance thereon of about $543, which he has deposited in his own name in the First National Bank, and threatens and is about to dispose of the personal property heretofore set out, which will prevent the plaintiff

from properly caring for, cultivating, and increasing the crop now growing on section 17 ; that her husband is wholly insolvent, and is financially wholly worthless, thriftless, and shiftless. The prayer is for an injunction restraining her husband from receiving the money on said draft, and from meddling, interfering, or in any manner disposing of said personal property, and from hindering and disturbing the plaintiff in the free use and disposition of the same, etc.

The defendant Brown has filed a very lengthy answer, which need not be noticed here. On the trial of the cause the court found "that the plaintiff, Eliza H. Brown, is entitled to one-half of the said sum of five hundred and forty-three and $\frac{60}{100}$ dollars, now in the possession of the said defendant bank, to-wit, the sum of two hundred and seventy-one and $\frac{80}{100}$ dollars, and find that the defendant, Daniel Brown, is entitled to the other half of said sum of money, being also the sum of two hundred and seventy-one and $\frac{80}{100}$ dollars, and that the defendant, the First National Bank of Lincoln, Nebraska, should pay the said sum of money in its possession, one-half of the same to said plaintiff and one-half to said defendant Brown, as aforesaid, and that the said plaintiff and the said defendant Brown should pay the costs of suit, each of said parties to pay one-half of said costs," and rendered a decree accordingly.

The defendant appeals. There is a supplemental answer filed by the defendant, in which it is alleged that the plaintiff, since the bringing of the action, has sold eleven hundred of the sheep, of the value of $3,300, one horse of the value of $200, the corn on one hundred and twenty acres of said section 17, of the value of $5 per acre, one horse and pony, of the value of $75, and one cow and calf, of the value of $80, being part of the property described in the petition.

It appears from the testimony that the plaintiff and

defendant were married about twenty-five years ago, and that two sons were born to them; that in March, 1881, the defendant and oldest son came to this state, the son at that time being about sixteen years of age; that the defendant Brown purchased the section of land in controversy from the B. & M. R. R. Co., and made the first payment thereon, amounting to between eight hundred and nine hundred dollars; that the defendant brought about $4,500 in money to this state, which seems to have belonged to his father; that in June, 1881, the plaintiff came to this state to join her husband. The oldest son seems to have been sick before her arrival, and soon afterwards died. The youngest son at that time was about eleven years of age. The amount of improvement made by the defendant upon the section in question does not very clearly appear, but he seems to have erected a dwelling-house and a large shed for the protection of stock, and broken up one hundred and twenty acres of the land. This shed the plaintiff caused to be removed from the land and placed on a lot in the city of Lincoln. Soon after purchasing the land in controversy, the defendant purchased nine hundred sheep from Hawkins for $4,500, and borrowed of him $800 to pay for feed and other things, and to secure Hawkins executed a chattel mortgage upon the sheep, and also assigned the land contract, upon which Hawkins made four payments of principal and interest, the last payment being made one year before it was due. The plaintiff lived with the defendant on the farm for some time, but early in the winter of 1881–82 removed to Lincoln, as she claims, for the purpose of educating her son, and obtained employment as clerk in a store, and for a large portion of the time from the date of removing to Lincoln until the bringing of this suit, she remained in Lincoln as clerk in a store, and supporting herself and son. She and her husband, however, seem to have been on intimate and friendly terms, and, as far as the testimony tends to show,

the arrangement was only temporary. The testimony of a number of the neighbors of the defendant show that he resided on the land in question, and was a good farmer, and held in esteem by his neighbors. The testimony does not show, but it is apparent from the circumstances, that the sheep had been purchased at a high price, and that the many expenses incident to opening up a new farm made a heavy drain upon his resources, while the continued absence of his wife prevented the practice of such economy in household management as probably otherwise would have obtained. In February, 1886, Hawkins was pressing his claim against the defendant for payment, and as he was unable to meet the obligations, the plaintiff proposed to assume the debts, upon the defendant surrendering all claim to the property. This he assented to. There is no question between creditors and the plaintiff, the only question being as to the validity of the contract between the husband and wife. So far as we can see, the contract was deliberately entered into, and no sufficient cause has been shown, either in the pleadings or proofs, for setting it aside. It may indeed be questioned if the plaintiff's disposition of the personal property was for the best interest of the parties. It all seems to have been sold for much less than its value, but under the contract the plaintiff had unlimited power of disposing of such property. It is difficult to perceive, therefore, under the evidence in this case, what relief can be granted to the defendant, there being no such grounds either pleaded or proved. The judgment will be affirmed. It is probable that if an action was brought by the defendant to redeem, and offering to pay the entire debt and interest, that he would be entitled to relief, but that question is not before the court.

JUDGMENT AFFIRMED.

THE other judges concur.